IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Doreen Aidoo, *et al.*, | : | Case No. 1:19-cv-225 |
| | : | |
| Plaintiffs, | : | Judge Susan J. Dlott |
| | : | |
| v. | : | Order Granting Plaintiffs' Motion for |
| | : | Summary Judgment and Denying |
| United States of America, *et al.*, | : | Defendants' Motion for Summary |
| | : | Judgment |
| Defendants. | : | |

This matter is before the Court on cross-Motions for Summary Judgment filed by

Plaintiffs Doreen Aidoo and David Osei and by Defendants United States of America, the

Secretary of the U.S. Department of Homeland Security, the U.S. Attorney General, the Director

of the U.S. Citizenship and Immigration Services ("USCIS"), and the Cincinnati Field Office

Director of the USCIS. (Docs. 16, 19.) The Court is asked to determine under the

Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, whether the Board of

Immigration Appeals' ("BIA's") final decision to deny Mr. Osei's visa petition was arbitrary and

capricious. For the reasons that follow, the Court concludes that the BIA's decision was

arbitrary and capricious, and therefore, the Court will **GRANT** Plaintiffs' Motion and **DENY**

Defendants' Motion.

I. **BACKGROUND**

Plaintiffs married on August 27, 2016 and have one son. Ms. Aidoo is a United States

citizen. Mr. Osei is a resident of Ghana who entered the United States legally on October 13,

2007 on a nonimmigrant visa, but he did not depart the country when the visa expired on January

12, 2008. (Doc. 13-1 at PageID 122.) Defendants are the United States and various government

officials sued in their official capacities.

1

This case concerns the disposition of a Form I-130 Petition for Alien Relative that Ms. Aidoo filed on behalf of her husband, Mr. Osei. The BIA dismissed Ms. Aidoo's appeal of the USCIS decision denying her Form I-130 Petition on the basis that Mr. Osei had previously entered into a fraudulent marriage with Ashley Robinson for purpose of evading immigration laws. In setting forth the relevant facts, the Court will look first at the Form I-130 Petition process, then at Mr. Osei's prior marriage to Ms. Robinson, and finally at Mr. Osei's marriage to Ms. Aidoo and her Form I-130 Petition on his behalf.

**A.      Overview of the Form I-130 Petition Process and Immigration Law**

Defendants provide a concise overview of the relevant immigration law which the Court largely restates here. (Doc. 19 at Page ID 484–485.) Under the Immigration and Nationality Act ("INA"), a United States citizen who marries a non-citizen can file a visa Form I-130 Petition for Alien Relative to classify the citizen's spouse as an immediate relative. INA § 204(a), 8 U.S.C. § 1154(a). When a Form I-130 Petition is approved, the non-citizen spouse may be eligible to apply for lawful permanent resident status by filing a Form I-485 Application to Register Permanent Residence or Adjust Status. INA § 245(a), 8 U.S.C. § 1255(a).

The Secretary of Homeland Security and the USCIS investigate and adjudicate visa petitions. INA § 103(a), 8 U.S.C. § 1103(a). The citizen petitioner has the burden to prove by a preponderance of the evidence that the non-citizen beneficiary is eligible for the immigration benefit sought. *Matter of Brantigan*, 11 I. & N. Dec. 493, 493 (BIA 1966). For a Form I-130 Petition in the circumstances of this case, the citizen petitioner must prove by a preponderance of the evidence that her non-citizen spouse is eligible to be designated as her immediate relative. That is, "the petitioner must establish the *bona fides* of the marital relationship." *Gadzhieva v. Lynch*, No. 2:15-CV-2651, 2017 WL 11457230, at *1 (S.D. Ohio July 20, 2017).

The INA prohibits the approval of visa petitions in cases of marriage fraud.  INA § 204(c) provides:

> Notwithstanding the provisions of subsection (b) no petition shall be approved if (1) the alien has  previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c).  As the regulations explain, "[s]ection 204(c) of the [INA] prohibits the approval of a visa petition filed on behalf of an alien who has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws."  8 C.F.R. § 204.2(a)(1)(ii).  A visa petition "filed on behalf of any alien for whom there is substantial and probative evidence of such an attempt or conspiracy" will be denied.  *Id.*  "The statute imposes a one-strike rule, meaning that, after one prior finding of a sham marriage, the immigration authorities must reject all future efforts at an adjustment of status based on marital status."  *Thawatchai Foythong v. Holder*, 743 F.3d 1051, 1053 (6th Cir. 2014).  "[S]ection 204(c) of the Act applies only where the [non-citizen] *beneficiary* is found to have engaged in fraud, [but] actions of a petitioning spouse may be relevant to the inquiry."  *Matter of P. Singh*, 27 I. & N. Dec. 598, 609 (BIA 2019) (emphasis in the original).  If the USCIS finds "substantial and probative" evidence of marriage fraud, it must issue a Notice of Intent to Deny informing the petitioner about such derogatory evidence in the record and provide the petitioner a chance to respond.  8 C.F.R. § 103.2(b)(16). The petitioner then can try to "rebut the evidence and demonstrate the *bona fides* of the suspected fraudulent marriage."  *Gadzhieva*, 2017 WL 11457230, at \*1.

"A factual determination by the BIA that an alien's marriage was entered for the purpose of gaining entry into the United States is conclusive if it is supported by reasonable, substantial,

and probative evidence when the record is considered as a whole." *Adi v. United States*, 498 F. App'x 478, 481 (6th Cir. 2012) (cleaned up). The BIA has instructed that "substantial and probative" evidence is "higher than a preponderance of the evidence and closer to clear and convincing evidence." *Singh*, 27 I. & N. Dec. at 607. "The application of the 'substantial and probative evidence' standard requires the examination of all of the relevant evidence and a determination as to whether such evidence, when viewed in its totality, establishes, with sufficient probability, that the marriage is fraudulent." *Id.* Circumstantial evidence can be sufficient to meet the substantial and probative evidence standard. *Id.* at 608. "[T]he nature, quality, quantity, and credibility of the evidence in the record should be considered in its totality." *Id.* at 610.

> Factors indicating that a couple were married in good faith can include the following:
>
> (1) documents demonstrating the commingling of assets and liabilities, (2) the length of time the parties cohabited, (3) birth certificates for children born to the marriage, (4) proof that the petitioner's spouse is listed on insurance policies, property leases, income tax forms, or bank accounts, and (5) testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences.

*Adi*, 498 F. App'x at 481. On the other hand, the BIA in *Singh* discussed factors that can be substantial and probative evidence of marital fraud. "Significant inconsistencies coupled with minimal documentary evidence of a shared life may support a conclusion that a petitioner has not met his or her burden to establish the bona fides of the marriage." *Singh*, 27 I. & N. Dec. at 608. Also, "evidence that one or both parties have been . . . holding themselves out to be single" can support a finding of marriage fraud, and "[o]fficial Government documents indicating fraud carry more evidentiary weight than informal evidence of a bona fide marriage, such as insurance policies or bank account statements." *Id.* at 609.

4

**B.      Mr. Osei's Marriage to Ms. Robinson and the Initial Form I-130 Petitions**

Mr. Osei married Ms. Robinson on August 8, 2012.  (Doc. 13-1 at PageID 122.)  Ms.

Robinson filed her first Form I-130 Petition on behalf Mr. Osei on September 7, 2012.  She

submitted their marriage license as evidence in support, but no other evidence.  (*Id.* at PageID

122, 394.)  USCIS interviewed Ms. Robinson and Mr. Osei on December 14, 2012.  At that time,

they reported that they lived together with Mr. Osei's cousin, Peter Ampofo.  Subsequently, the

USCIS officer requested additional evidence from them via U.S. mail sent to Mr. Ampofo's

address, but the mail was returned as undeliverable.  (*Id.* at PageID 382–385.)  The USCIS

denied the first Form I-130 Petition as abandoned.  (*Id.* at PageID 380–381.)

Ms. Robinson filed a second Form I-130 Petition on March 20, 2013 on behalf of Mr.

Osei.  (*Id.* at PageID 122.)  She submitted the following evidence in support as described by

USCIS:

> • Pictures of Ms. Robinson and [Mr. Osei] taken at their wedding, and on two
> other days;
>
> • Evidence that [Mr. Osei] had transferred ownership of his 2003 Saturn Vue from
> his sole ownership to he and Ms. Robinson's joint ownership;
>
> • Evidence that Ms. Robinson was listed on the beneficiary's auto insurance;
>
> • A letter from PNC Bank stating that Ms. Robinson and [Mr. Osei] had a joint
> account.  The letter was dated from the two-week period during which Ms.
> Robinson had the above-referenced bank account open with a $30 balance; and
>
> • A letter from Peter Ampofo, stating that Ms. Robinson and the beneficiary
> resided with him, along with a partial copy of his lease that does not list either
> Ms. Robinson or the beneficiary as residents.  The address on the lease was the
> same address to which USCIS issued two requests for evidence which were
> returned as "undeliverable."

(*Id.* at 122, 368–373, 397–408.)[1]  USCIS approved the second Form I-130 Petition without

---

[1]  The Court is quoting USCIS's summary of the evidence.  The Court's was not able to match every document in
the USCIC summary to the documents in the administrative record before the Court.  The Court discusses the
evidence in the administrative record in more detail in the Analysis *infra*.

requesting an interview.  (*Id.* at PageID 123.)

Mr. Osei then filed a Form I-485 Application to Register Permanent Resident or Adjust Status in October 2014.  (*Id.*)  Mr. Osei and Ms. Robinson were interviewed separately in April 2015 in connection with the Form I-485 Application regarding the bona fides of their marriage.  (*Id.*)  USCIC determined that their sworn testimony was different on several material issues including whether Ms. Robinson's children lived with her in Middletown, Ohio or with her mother in Cincinnati, Ohio; who took the children to school in the morning; whether Mr. Osei performed his services as a barber at his home or at his clients' homes; the means by which Ms. Robinson provided for health insurance coverage for her children; and whether the rental office for their townhouse knew that Ms. Robinson lived with Mr. Osei.  (*Id.* at PageID 123, 351–353.)

The USCIC Office of Fraud Detection and National Security also contacted the Cincinnati Metropolitan Housing Authority ("CMHA") regarding Ms. Robinson.  CMHA records indicated that Ms. Robinson had lived in CMHA public housing since 2007.  (*Id.* at PageID 124.)  Ms. Robinson told CMHA in March 2013, March 2014, and March 2015 that she was single and had never been married.  (*Id.* at PageID 124, 244–246.)  She listed her mother and sister as emergency contacts, not Mr. Osei.  (*Id.* at PageID 265, 267, 271.)  For CMHA, she listed an address on Winneste Avenue in Cincinnati as her residence for 2013–2015.  During that same three-year period, Ms. Robinson had provided USCIS with three different residences, but none on Winneste Avenue in Cincinnati.  (*Id.* at PageID 124.)  The USCIS Office of Fraud Detection and National Security attempted to do a site visit at the CMHA apartment to determine if Ms. Robinson lived there with her children, but they abandoned the effort due to the presence of "individuals around the apartment complex who appeared to be paying considerable attention to the officers in the van."  (*Id.* at PageID 243.)

On August 17, 2015, USCIS provided Ms. Robinson with Notice of Intent to Revoke its approval of her second Form I-130 Petition.  (*Id.* at PageID 124.)  She was given thirty days to respond, but she failed to do so.  On September 30, 2015, USCIS revoked approval of the Form I-130 Petition filed on behalf of Mr. Osei.  (*Id.* at PageID 125.)  USCIS concluded that Ms. Robinson failed to establish that her marriage was not entered into to circumvent the immigration laws.  (*Id.*)

Ms. Robinson and Mr. Osei divorced on June 17, 2016.  (*Id.*)

## C.    Mr. Osei's Marriage to Ms. Aidoo and the Pending Form I-130 Petition

Mr. Osei married Ms. Aidoo on August 27, 2016.  (*Id.* at PageID 125, 180.)  Ms. Aidoo filed a Form I-130 Petition on behalf of Mr. Osei on November 4, 2016.  USCIS concluded that the marriage between Ms. Aidoo and Mr. Osei was bona fide.  (*Id.* at PageID 125.)  However, it issued a Notice of Intent to Deny ["NOID"] the Form I-130 Petition on the basis of INA § 204(c) because Ms. Aidoo had not established that the prior marriage between Mr. Osei and Ms. Robinson had not been a sham marriage.  (*Id.*)

Ms. Aidoo attempted to rebut the conclusion that Mr. Osei's prior marriage to Ms. Robinson had been a sham.  She submitted the following additional evidence as described by USCIS:

> • A letter of response to the NOID, written on [Ms. Aidoo's] behalf by [her] attorney, Felix Okpe;
>
> • An affidavit notarized and signed by Ashley Robinson, the beneficiary's former spouse, on April 28, 2017;
>
> • A copy of the U.S. Department of Justice, Executive Office for Immigration Review (EOIR), Decision of the Board of Immigration Appeals (BIA), dated May 13, 2015, regarding the Form I-130 petition filed by the beneficiary's former spouse, Ashley Robinson;
>
> • Copies of an Alfa Vision Insurance Group's Ohio personal auto policy renewal declaration, insurance cards, and policy payment schedule, dated as processed on

February 21, 2014, for the period February 21, 2014, to February 21, 2015, in the beneficiary's name, and Ashley Robinson's name, at 7008 School View Drive, Liberty Township, Ohio 45044-3210;

• Copies of Kemba Credit Union account statements for the periods April 1, 2014, to June 30, 2014, an overlapping period of June 1, 2014, to July 31, 2014, and October 1, 2014, to December 31, 2014, in the beneficiary's name and Ashley Robinson's name, at 4350 Bonita Drive, Apartment 11, Middletown, Ohio 45044-6675, and 7008 School View Drive, Liberty Township, Ohio 45044-3210; and

• A copy of a Duke Energy billing statement, for the period December 7, 2013, to January 9, 2014, and a copy of a Duke Energy final billing statement, for the period July 9, 2014, to July 25, 2014, in the beneficiary's name and Ashley Robinson's name, at 4350 Bonita Drive Apartment 11, Middletown, Ohio 45044.

(*Id.* at PageID 126.)[2]

In her affidavit dated April 28, 2017, Ms. Robinson stated that she entered into the marriage with Mr. Osei in "good faith" because they "loved each other" and that their intention was to "establish a life together." (*Id.* at PageID 141.) Ms. Robinson admitted that she had "omitted to disclose her connection to [CMHA]" to USCIS. (*Id.*) She asserted that she maintained her approval for CMHA housing for "personal family reasons" and without Mr. Osei's knowledge. (*Id.* at PageID 127, 141.) Finally, she stated that her failure to disclose the CMHA situation to Mr. Osei caused a strain on the marriage and led to their divorce. (*Id.* at PageID 141.)

Despite the new evidence, on August 30, 2017, USCIS denied Ms. Aidoo's Form I-130 Petition on behalf of Mr. Osei based on the determination that his prior marriage to Ms. Robinson had been for the sole purpose of evading immigration laws. (*Id.* at PageID 120–128.) USCIS also concluded that Ms. Aidoo's marriage to Mr. Osei was bona fide, but that finding did not overcome the INA § 204(c) bar based on the previous sham marriage. (*Id.* at PageID 125.)

The BIA denied her appeal on February 15, 2019 applying a *de novo* standard of review.

---

[2] This quote is USCIS's description of the evidence.

(*Id.* at PageID 76–78.)  The BIA decision relied on the "varying" and "non conforming" statements Mr. Osei and Ms. Robinson had made during their interviews with USCIS in connection with Mr. Osei's Form I-485 Application and the information obtained from CMHA about Ms. Robinson's marital status and living arrangements.  (*Id.*)  The Court will discuss the BIA decision and reasoning in more detail in the Analysis section *infra*.

**D.      Procedural History of this Action**

Ms. Aidoo and Mr. Osei filed their Complaint in this matter on March 28, 2019.  (Doc. 1.)  After filing their Answer, Defendants filed the administrative record and manually submitted copies of Plaintiffs' interviews with USCIS.  (Docs. 10, 13.)  With leave of the Court, Ms. Aidoo and Mr. Osei filed an Amended Complaint on October 21, 2019 correcting typographical errors in the initial Complaint.  (Doc. 14.)  The parties then filed the pending cross-Motions for Summary Judgment.  (Docs. 16, 19.)  The Motions are fully briefed and ripe for adjudication.

**II.      STANDARD OF REVIEW**

The parties filed Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The Rule provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The summary judgment standard is not strictly applicable to judicial review of agency decisions under the APA, 5 U.S.C. § 701, *et seq.*, however.  *Qing Tian v. United States*, No. 1:15cv264, 2017 WL 2964910, at *1 (S.D. Ohio July 12, 2017).  The district court cannot view evidence outside the administrative record on the APA review.  *Id.* (citing *Alexander v. Merit Syss. Protection Bd.*, 165 F.3d 474, 481 (6th Cir. 1999)).  When, as in this case, BIA reviewed the decision of the USCIC *de novo* and issued a separate opinion, the district court must review the BIA decision as the final agency decision.  *Khalili v.*

*Holder*, 557 F.3d 429, 435 (6th Cir. 2009); *see also Haddad v. Napolitano*, No. 1:13-CV-1028,

2014 WL 11309784, at *4 (W.D. Mich. Dec. 31, 2014) (same), *aff'd sub nom. Haddad v. Sec'y,*

*U.S. Dep't of Homeland Sec.*, 610 F. App'x 567 (6th Cir. 2015).  However, the district court also

must review the USCIS decision to the extent that the BIA adopts the reasoning of the USCIS.

*Khalili*, 557 F.3d at 435.

> The Sixth Circuit succinctly set forth the APA standard of review of an agency decision:

> The APA directs courts to review agency actions under a deferential standard.  A court may not set aside or hold unlawful an agency action unless that action is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).  An agency decision is arbitrary and capricious if the agency fails to examine relevant evidence or articulate a satisfactory explanation for the decision.  The reviewing court may not supply a reasoned basis for the agency's action that the agency itself has not given.  However, even when an agency explains its decision with less than ideal clarity, a reviewing court will not upset the decision on that account if the agency's path may reasonably be discerned.

*Bangura v. Hansen*, 434 F.3d 487, 502 (6th Cir. 2006) (cleaned up).

> An agency decision is arbitrary and capricious in the following circumstances:

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Kyeremeh v. Sessions*, No. 2:17-CV-497, 2019 WL 1114905, at *3 (S.D. Ohio Mar. 11, 2019)

(quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

The Sixth Circuit also has instructed that "[c]ursory, summary, or conclusory statements are

inadequate."  *Daneshvar v. Ashcroft*, 355 F.3d 615, 626 (6th Cir. 2004); *see also Kyeremeh*,

2019 WL 1114905, at *4 (same).

## III.    ANALYSIS

### A.    Overview

The Court must decide whether BIA abused its discretion when it determined that there was substantial and probative evidence that Mr. Osei previously married Ms. Robinson to evade the immigration laws.  If Mr. Osei's previous marriage was a sham, then BIA correctly denied Ms. Aidoo's Form I-130 Petition pursuant to the one-strike sham-marriage bar provided in INA § 204(c).  The Court is mindful in reviewing the BIA decision that the sham marriage bar of INA § 204(c) "applies only where the *beneficiary* is found to have engaged in fraud."  *Singh*, 27 I. & N. Dec. at 609 (emphasis in the original).

The BIA in making its decision primarily relied on two sets of evidence to determine that Mr. Osei's marriage to Ms. Robinson was a sham.  First, it reviewed the varying and non-corresponding statements made by Mr. Osei and Ms. Robinson during their Form I-485 Application interview in April 2015.  (Doc. 13-1 at PageID 77–78.)  Second, it relied on the information about Ms. Robinson's CMHA housing.  Additionally, it discounted evidence Ms. Aidoo provided that the marriage between Mr. Osei and Ms. Robinson had not been a sham.

**B.      The Evidence Examined**

The BIA first focused on varying and non-corresponding interview statements made by Mr. Osei and Ms. Robinson, including those about where the children lived, who took them to school, the source of the children's insurance coverage, where Mr. Osei provided his barber services, and whether the rental office for their townhouse knew that Ms. Robinson and her children lived with them.  (*Id.*)

The Court watched recordings of the separate interviews USCIS conducted with Mr. Osei and Ms. Robinson in April 2015 in connection with Mr. Osei's Form I-485 Application.  Mr. Osei's and Ms. Robinson's statements were not contradictory on all points.  Ms. Robinson stated that her children lived with her and Mr. Osei, but she later clarified that her children often stayed

with her mother because her mother lived close to the charter school that the children attended. (Doc. 13, Disk 4 at 3:30, 8:40, 9:50.)  She stated that she, her mother, or Mr. Osei drove the children to school, but that she drove them more often than Mr. Osei.  (Doc. 13, Disk 4 at 10:35.) Mr. Osei also testified that Ms. Robinson and her children resided with him.  (Doc. 13, Disk 5 at 3:30, 4:55.)  He was not asked if the children ever stayed with Ms. Robinson's mother.  When asked if he was involved in the children's lives and if he drove them to school, Mr. Osei responded that he drove them sometimes.  (Doc. 13, Disk 5 at 30:40.)[3]  As for where Mr. Osei performed his barber services, both Mr. Osei and Ms. Robinson agreed that he gave haircuts at his customers' homes.  (Doc. 13, Disk 4 at 11:40; Disk 13, Disk 5 at 6:40, 7:20.)  Mr. Osei denied that he gave haircuts at his own townhouse.  (Doc. 13, Disk 5 at 7:20.)  Ms. Robinson said that she thought he sometimes cut hair at their townhouse, but she admitted that she would have been asleep when he did because she worked nights and slept during the day.  (Doc. 13, Disk 4 at 11:40.)  Significantly, the BIA decision does not state that these varying and non-corresponding statements standing alone were enough to constitute substantial and probative evidence of a sham marriage.

Instead of relying solely on the interview discrepancies, the BIA also relied on the information that USCIS obtained from CMHA.  According to CMHA, Ms. Robinson had lived in public housing since 2007, she had told CMHA that she was not married, and she had listed her mother and sister as emergency contacts.  (Doc. 13-1 at PageID 78.)  "[E]vidence that one or both parties have been . . . holding themselves out to be single" can support a finding of marriage fraud.  *Singh*, 27 I. & N. Dec. at 609.  It is not probative evidence here, however, because Ms. Robinson's relationship with and statements to CMHA cannot be imputed to Mr. Osei in the

---

[3]  These statements are consistent with the first interviews that USCIS conducted with Mr. Osei and Ms. Robinson in December 2012.  Both Mr. Osei and Ms. Robinson stated that the children lived with Ms. Robinson's mother during the week and with them on the weekends.  (Doc. 13, Disk 2 at 2:00; Doc. 13, Disk 3 at 3:30.)

circumstances of this case.

The BIA acknowledged that Ms. Robinson attempted to explain to the USCIS her statements to the CMHA, though the BIA mischaracterizes her sworn affidavit as a mere letter. The BIA stated that "the [USCIS] Director properly found unpersuasive the letter provided by Ms. Robinson explaining that she kept the Cincinnati housing for 'personal family reasons' and without the knowledge of the beneficiary." (Doc. 13-1 at PageID 78.) Because the BIA appears to have adopted the analysis of the USCIS Director on this issue, the USCIS Director's analysis must be examined in this administrative review. *See Khalili*, 557 F.3d at 435. The USCIS Director stated the following in his written decision:

> USCIS maintains that the issue of Ms. Robinson's multiple assessments, applications, and interviews with CMHA, as discussed in the NOID, clearly demonstrate that the evidence strongly suggests that she did not reside in a bona fide marriage with the beneficiary. USCIS finds inadequate Ms. Robinson's explanation that she maintained her residence with CMHA for multiple years and during her marriage to the beneficiary for unspecified personal family reasons. Likewise, her explanation that she kept her residence with CMHA without the knowledge of the beneficiary, again suggests that her marriage was not bona fide, in that *a matter apparently as central to a marriage as where each spouse maintains a residence, was seemingly kept from the knowledge of the beneficiary during the marriage*.

(Doc. 13-1 at PageID 127 (emphasis added).)

This reasoning by the USCIS Director would not be arbitrary or capricious insofar as the USCIS Director Ms. Robinson's intentions in entering the marriage inferred from the CMHA evidence. *Singh*, 27 I. & N. Dec. at 609 (stating that false statements on official government documents can be substantial and probative evidence of marriage fraud). However, Ms. Robinson's deception concerning the CMHA sheds no light on Mr. Osei's intentions in entering the marriage. In reasoning adopted by the BIA, the USCIS Director acknowledged that Mr. Osei "seemingly" did not know about Ms. Robinson's CMHA housing status. (Doc. 13-1 at PageID

127.)[4] Only Mr. Osei's intentions are the proper focus of the INA § 204(c) inquiry. *Singh*, 27 I. & N. Dec. at 609 ("[S]ection 204(c) of the Act applies only where the *beneficiary* is found to have engaged in fraud."). Ms. Robinson's possible fraudulent intent cannot be imputed to Mr. Osei if he did not know about her deception. The BIA decision was arbitrary and capricious to the extent it concluded that Mr. Osei entered into a marriage to evade immigration laws based on Ms. Robinson's "seemingly" unilateral deception about her CMHA housing status.

The BIA decision also is problematic to the extent that the BIA acknowledged that Ms. Aidoo "provided some documentary evidence in an attempt to refute the Director's determination" that the Ms. Robinson and Mr. Osei marriage was sham, but it then summarily dismissed that evidence as insufficient. (Doc. 13-1 at PageID 78.) It stated only that "the proffered evidence is not sufficient to rebut the concerns raised by the derogatory information." (*Id.*) The BIA did not discuss or even identify the following documentary evidence in the administrative record which is contrary to a finding that Mr. Osei had a sham marriage with Ms. Robinson:

- Wedding photos and photos of Mr. Osei and Ms. Robinson together with other people. (*Id.* at PageID 397–408.)

- A letter dated March 14, 2013 from PNC Bank indicating that Mr. Osei and Ms. Robinson had a joint account. (Doc. 13-1 at PageID 373.)

- A Certificate of Title for a Saturn Vue automobile dated March 15, 2013 listing both Mr. Osei and Ms. Robinson as the owners of the vehicle. (Doc. 13-1 at PageID 371.)

- Automobile insurance policy cards through Alfa Vision Insurance Corporation effective March 2013 and February 2015 listing both Mr. Osei and Ms. Robinson as covered drivers. (Doc. 13-1 at PageID 344, 372.)

---

[4] Ms. Robinson, for her part, averred in her affidavit that Mr. Osei did not know that she maintained her CMHA connection. (*Id.* at PageID 141.)

- A notarized statement dated March 17, 2013 from Mr. Ampofo, Mr. Osei's cousin, stating that Mr. Osei and Ms. Robinson resided with him at that time as co-tenants.  (Doc. 13-1 at PageID 368.)

- Kemba Credit Union accounts in both names at a shared residential address from January through March 2014 and January through March 2015.  (Doc. 13-1 at PageID 332–333, 374.);

- A life insurance policy effective May 20, 2014 through Globe Life on Mr. Osei listing Ms. Robinson as the beneficiary.  (Doc. 13-1 at PageID 334–339.);

- Duke Energy billing statements in both names at a shared residential address for March and April 2015.  (Doc. 13-1 at PageID 340–343.)

Prior to the discovery of the CMHA information about Ms. Robinson, USCIS approved Ms. Robinson's Form I-130 Petition on behalf of Mr. Osei based these records.  (Doc. 13-1 at PageID 122.)  This decision was consistent with the BIA's standard that joint bank accounts "are generally considered to be evidence supportive of a bona fide marital relationship, in the absence of an objective basis in the record for discrediting the evidence."  *Matter of Patel*, 19 I. & N. Dec. 774, 785 (BIA 1988).  It was arbitrary and capricious for the BIA to dismiss the financial records here without articulating a "a satisfactory explanation" for its decision that they were insufficient.  *Bangura*, 434 F.3d at 502; *see also Kyeremeh*, 2019 WL 114905, at *4 (finding conclusory a USCIS determination that documentary evidence was "of little probative value" and "easily fabricated").

Finally, it is worth noting the BIA's statement in the denial decision about when marriage fraud is typically found:

> Marriage fraud can be found with an admission by the beneficiary or (former) spouse that they colluded to evade the immigration laws. *See generally Salas-Velazquez* v. *INS,* 34 F.3d 705 (8th Cir. 1994).  Marriage fraud can be found where the (former) spouse was paid to marry the beneficiary. *See generally Ghaly* v. *INS,* 48 F.3d 1426 (7th Cir. 1995).  Marriage fraud can be found where the marriage was never consummated, where the spouses never cohabited, and where the spouses never held themselves out to family and friends as husband and wife. *See Matter of Phillis,* 15 I&N Dec. 385 (BIA 1975).

(Doc. 13-1 at PageID 78.)  The BIA did not specifically find that any of these sham marriage indicators were present in the marriage between Mr. Osei and Ms. Robinson.[5]

In sum, the BIA decision that there was substantial and probative evidence that Mr. Osei entered into a marriage with Ms. Robinson to evade immigration law was arbitrary and capricious.  The BIA wrongly imputed to Mr. Osei the misrepresentations Ms. Robinson made to CMHA "seemingly" without his knowledge.  It also failed to give a reasoned explanation for why the objective financial and insurance records indicating Ms. Robinson and Mr. Osei shared a life together were insufficient to overcome the varying and non-corresponding statements they made in their USCIC interviews in April 2015.  The Court will remand this matter to the BIA for further proceedings.[6]

IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (Doc. 16) is **GRANTED** and Defendants' Motion for Summary Judgment (Doc. 19) is **DENIED**.  The case is **REMANDED** to the BIA for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

BY THE COURT:

S/Susan J. Dlott
Susan J. Dlott
United States District Judge

---

[5]  Neither USCIS nor the BIA specifically concluded that Ms. Robinson lived in the CMHA housing and not with Mr. Osei.  This may be because the USCIS Office of Fraud Detection and National Security abandoned after one failed attempt its effort to determine who actually lived at the Winneste Avenue address claimed by Ms. Robinson. (Doc. 13-1 at PageID 243.)  Also, Ms. Robinson and Mr. Osei were consistent in their separate interviews regarding at what addresses they lived at different times and whose names were on the rental leases.

[6]  The Court in this analysis has not attempted to independently weigh the evidence or to reach a conclusion as to whether Mr. Osei married Ms. Robinson to evade immigration laws.  Such an inquiry is beyond the purview of the Court.